ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 07 2006
at ____ o'clock and ____min ____ M
SUE BEITIA, CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

JASON APELA GONSALVES )
                    PETITIONER )
                             )
      VS.                    )
                             )
UNITED STATES OF AMERICA     )
            RESPONDANT        )
                             )

CV06 00315 DAE KSC

CASE NO: 02-00176-08 (DAE)

---

MOTION UNDER TITLE 28 U.S.C. §2255 TO VACATE, SET ASIDE, OR
CORRECT SENTENCE

---

DOCKET # 02-00176-08 (DAE)

RESPECTFULLY SUBMITTED,

JASON APELA GONSALVES

ISSUES

I    Whether the Indictment was amended and the Petitioner was pun-
     ished for a crime not listed in the Indictment.

II   Whether (under FRCP) the Plea Agreement was violated by the
     government,

III  Whether the Court erred by punishing the Petitioner on the wrong
     Criminal History Level.

IV   Whether the Petitioner's Trial Counselor was grossly ineffective
     that violated Petitioners Sixth Amendment.

V    Whether Petitioner is Actually Innocent.

VI   Whether the Court Granted A-substantial downward departure for
     the substantial assistance that was given, by the Petitioner.

## STATEMENT OF THE CASE

The Petitioner was part of an investigation by the F.B.I. with assistance of the Honolulu and Maui County Police Department.

During the investigation it was reveled that the Petitioner was no more than a courier or a mule for Amako Malepeai, (See PSR Page 15 number 20.

The Petitioner was arrested and charged in a superseding indictment. They charged Petitioner in  Count 1: Conspiracy to distribute and possess with intent to distribute in excess of 50 grams of Methamphetamine, in violation of Title 21 U.S.C. § 846, a Class A Felony.

The Petitioner entered in a Plea Agreement pusuant to Rule 11 of the Federal Rules of Criminal Procedure with the United States of America and plead guilty to Count 1 of the Superceding Indictment (See #4-2nd. Page of Plea Agreement) and the government agreed to move to dismiss the remaining counts of the First Superceding Indictment as to the defendant, (See #4-2nd Page of Plea Agreement).

The Petitioner started assisting Law Enforcement immediately and the Honorable Judge did grant the Petitioner a 5k1.1 for substantial assistance.

Please look at U.S.S.G. Book 2001 Edition and under ; 2D1.1. level 26 it plainly states that at least 50 grams but less than 200 grams of Methamphetamine should be sentenced on level 26. Level 26 covers what the petitioner agreed to in his plea agreement. Petitioner is Criminal History Category (CHC) I. After a three level departure for acceptance of responsibility and three levels for a ; 5k1.1, the Petitioner should have been sentenced on CHC I Level 20 (33 to 41 Months).

## I WHETHER THE INDICTMENT WAS AMENDED

The Petitioner was sentenced on Marijuana drugs instead of the Charge Offense in the indictment charging Petitioner with possession with intent to distribute in excess of 50 grams of Methamphetamines which created a change or Amendment to the Indictment, which created a harsher punishment to the Petitioner.

An Indictment must contain every element of the charged offense to pass Constitutional Muster. UNITED STATES v. FERN, 155 F.3d. 1318 (11th Cir. 1998); UNITED STATES v. STEFAN, 784 F.2d. 1093 (11th Cir. 1986). This is because the Sixth Amendment gurantees every defendant the right to be informed of the governments accusations against him. UNITED STATES v. CHICOTE, 724 F.2d 1498 (11th Cir. 1984). Federal Rules of Criminal Procedure 7(c)(1) provides that an indictment shall be a plain, concise and definite written statement of the essential facts constituting the charge offense. UNITED STATES v. GOLD, 743 F.2d 800 (11th Cir. 1984).

When the evidence at sentencing deviates from what is alleged in the indictment, two problems can arise; constructive amendment or variance. UNITED STATES v. FLYNT, 15 F.3d. 1002 (11th Cir. 1994). The distinction between the two terms is important because a constructive amendment of the indictment is per-se reversible.

The Petitioner's Indictment was constructive amendment because he was punished for selling Marijuana, not Methamphetamines that he was charged with in the Indictment.

This case shold be remanded and the petitioner should have his sentenced vacated.

## II WHETHER THE PLEA AGREEMENT WAS VIOLATED

Petitioner plead guilty to the First Superceding Indictment Count One and that Count was Conspiracy to distribute and possess with Intent to distribute in excess of 50 grams of Methamphetamines in violation of U.S.C. § 846 a class A Felony.

Petitioner signed a Plea Agreement. By signing the plea agreement the petitioner expected to be sentenced on Level 26 Criminal History Category I. In Petitioners plea agreement the government agreed to drop all other charges against the Petitioner. The government did drop all other charges.

The Petitioner was not sentenced on Count One of the First Superceding Indictment. The Petitioner was sentenced on Level 40 CHC I less 3 points for acceptance of Responsibility and additional departure for a 5K1.1. motion from the government.

The Petitioner was enhanced fourteen levels after signing the Plea Agreement. When the Petitioner signed the Plea Agreement All Other Counts against the Petitioner was dropped, and since the Petitioner was granted a 5k1.1, the Honorable Court could have sentenced the Petitioner below the mandatory Minimum for his substanial assistance.

For the above reasons the petitioner prays that the Honorable Court will correct his sentence and punish him on CHC I Level 20 after his acceptance of responsibility and 5k1.1 motion is deducted.

III WHETHER THE COURT ERRED BY PUNISHING PETITIONER'S
ON THE WRONG CRIMINAL HISTORY LEVEL AND ENHANCEMENTS
THAT THE PETITIONER DID NOT PLEAD GUILTY TO.

The Petitioner signed a plea agreement with the government and all counts were dropped against the Petitioner except Count I of the First Superceding Indictment.

If all other counts were dropped and they were, the Petitioner's Base Offense Level would be CHC I Level 26 before any downward departure is deducted.

However at sentencing the petitioner received 151 months instead of what he bargained for after downward departures (33 to 41 Months). By preponderance of the evidence the Court enhanced the Petitioner from level 26 to level 40 when all other charges against the Petitioner was dropped.

Because all other counts were dropped the Petitioner understanding that he would be sentenced under the U.S.S.G.'s §2D1.1 and was suppose to receive 33 to 41 months and received 151 months is a gross mistake because the petitioner was not sentenced as charged in the indictment therefore the government has violated FRCP Rule 11 and this case should be remanded for resentencing.

IV WHETHER PETITIONER'S TRIAL ATTORNEY WAS
   GROSSLY INEFFECTIVE THAT VIOLATES PETITIONER'S
   SIXTH AMENDMENT.

Ineffective assistance of Counsel claims should be raised in a post conviction motion to the District Court, pursuant to 28 U.S.C. §2255, so that an adequate record on the issue can be developed. UNITED STATES v. RAHAL, 191 F.3d 642-645, (6th Cir. 1998) (Uneffective Assistance Claims based on such Conflict should be Litigated in §2255 Action. UNITED STATES v. PRUETT, 156 F.3d 638, 646, (6th Cir. 1998), (Ineffective Assistance Claims must be raised in District Court where record is sufficient to review the merits.

Whether reached on Direct Appeal or a §2255 proceeding, the two prong test announced by the Supreme Court in STRICKLAND v. WASHINGTON, 466 U.S. 668, (1984) is the Benchmark in determining in retrospect whether Assistance of Counsel has been Constitutionally adequate. GRAVELY v. MILLS, 87 F.3d 779, 785 (6th Cir. 1996), UNITED STATES v. PIERCE, 62 F.3d 818, 833 (6th Cir. 1995), cert. denied, 516 U.S. 1136 (1996). Both the performance and the prejudice prong of Ineffective, ness inquiry present a mixed question of law and fact subject to de novo review.

To answer prong one of STRICKLAND, relates to the Competence Level of Counsel that fell below "an objective standard of reasonableness." In this case the Trial Counsel (Defense Counsel) Failed to address whether the indictment had been constructively amended.

The Perjudice Prong of <u>STRICKLAND</u> to show that defense acted below a reasonable standard, is the Fact that the Petitioner was perjudiced by Defense Counselor <u>Failure to Challenge</u> the issues that have been mentioned and Petitioner received at least Fifty One Months more than his supplier.

This case should be remanded because Petitioner's Sixth Amendment was <u>Violated</u> by having inadequate Counsel.

V ACTUAL INNOCENT OF CHARGE

The Petitioner questions the indictment as whether he is guilty as charged, even thou the Court converted other drugs not charged in the indictment to Marijuana and gave the Petitioner a harsher sentence.

In WAUCAUSH v. UNITED STATES, 380 F.3d 251 (6th Cir. 2004), To illustrate this case, imagine the Waucaush had admitted to stealing apples from the post office, he was advised by his counsel and the Court that apples were vegetables and he plead guilty to stealing vegetables from a Federal Building and later the Supreme Court ruled that apples were not vegetables, Waucaush would be actually innocent of "Stealing Vegetables."

In short the Petitioner plead guilty, via plea agreement to Conspiracy to distribute and possess with intent to distribute in excess of 50 grams of Methamphetamines. Instead of punishing the Petitioner for what he plead guilty to, the Honorable Court sentenced him for a total of 68,503 Kilograms of Marijuana, which defendant did not plea guilty to. Therefore Petitioner was improperly sentenced and this case should be remanded to correct the sentence.

VI WHETHER THE COURT GRANTED A SUBSTANIAL DOWNWARD
DEPARTURE FOR THE SUBSTANIAL ASSISTANCE THAT WAS
GIVEN BY THE PETITIONER.

The Petitioner was one of the first people arrested in this case
and he immediately started assisting the government in investigating
others. The Petitioner told the government about the other people in-
volved, especially Tasi Malepea; AKA "TAZ".

TASI MALEPEAI was the person that supplied the Petitioner with
the drugs that he delivered to different sources.

See PSI page 18 #30 the petitioner was nothing more than a courier.
See PSI page 20 where defendant delivered drugs to POLOTANI LATU in MAUI.
Latu did not pay the defendent and the defendant struggle to pay his
supplier TASI MALEPEAI.

The defendant never received a downward departure for being a MULE.

Please see Exhibit II where the AUSA Mr. MUEHLECK asked the Court
to award the Petitioner a downward departure for substanial assistance
to the government. Because of Petitioner's assistance to the government.
Petitioner's supplier Tasi Malepeai plead guilty, just like other co-
defendants plead guilty because of the Petitioner's substantial assistance
to the government.

Because of Petitioner's assistance Tasi Malepeai, also started to
assist the government and the case was basically won because of the Peti-
tioner's assistance. The Petitioner never received any relief from the
government for the help that Tasi gave the government.

Tasi Malepeai received 90 months and plead guilty to the same charge as the Petitioner. The Petitioner was a courier for Mr. Malepeai and received 151 months for committing the same crime as Mr. Malepeai committed.

Mr. Tasi Malepeai was brought into the open by the Petitioner and then Mr. Malepeai assisted the government in further investigation of others. The Petitioner's argument is simply that he should not have received a harasher punishment than Mr. Malepeai his supplier.

If the Honorable Court will look at the punishment section of §841 (B)(viii) it states! 5 grams or more of Methamphetamines, its salts, isomers, and salts of its isomers or 50 grams or more of a mixture or substance containing a dectable amount of Methamphetamines, its salts, isomers, or salts of the isomers; such persons shall be sentenced to a term of imprisonment of not less than five years and not more than 40 years.

The Petitioner received a 5k1.1 Motion from the government and they recommended a downward departure and that he should be sentenced on the low end. If that is the case, the Petitioner would receive 60 months instead of 151 months using punishment in this section.

The Petitioner is asking the Honorable Court and AUSA Mr. Muehleck to reconsider the sentence of the Petitioner and least sentence the Petitioner to the same punishment as his supplier Tasi Malepeasi.

MEMORANDUM OF LAW IN SUPPORT OF

PETITION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255

STATEMENT OF ISSUES UNDER CONSIDERATION

A.    THE PETITIONER'S RIGHTS TO A JURY TRIAL AND DUE PROCESS OF
LAW WERE VIOLATED WHEN HE WAS PUNISHED UPON FACTS THAT WERE NEITHER
SUBMITTED TO A JURY NOR PROVED BEYOND A REASONABLE DOUBT; IF THE
SENTENCING GUIDELINES ALLOW THE DISTRICT COURT TO PUNISH THE
PETITIONER UPON SUCH FACTS, THE GUIDELINES ARE UNCONSTITUTIONAL
AS APPLIED.

LAW AND ARGUMENT

The Supreme Court has set new precedent requiring "other than
the facts of a prior conviction, any fact that increases the stat-
utory maximum [of a sentence] must be submitted to a jury and proved
beyond a reasonable doubt." Blakely v. Washington, 124 S. Ct. 2531,
2536; 159 L.Ed. 2d 403 (2004) (citing Apprendi v. New Jersey, 530
U.S. 466, 490, 147 L.Ed.2d 435, 120 S. Ct. 2348 (2000). The stat-
utory maximum was defined as the maximum sentence that may be im-
posed by a judge based solely on the facts reflected in the jury
virdict. Blakely, at 124 S. Ct. at 2537.

The Petitioner was sentenced beyond the statutory maximum  for
his offenses of conviction based upon elements that were not sub-
mitted to or proved to a jury beyond a reasonable doubt. The Peti-
tioner submits that his sentence must be vacated and this matter
set for resentencing. Because the Petitioner's sentence was en-
hanced based on unproven factors, his sentence must be vacated.

A.   THE PETITIONER RIGHTS TO A JURY TRIAL AND DUE PROCESS
     OF LAW WERE VIOLATED WHEN HE WAS PUNISHED UPON FACTS
     THAT WERE NEITHER SUBMITTED TO A TRIER OF FACT NOR
     PROVED BEYOND A REASONABLE DOUBT; IF THE SENTENCING
     GUIDELINES ALLOW THE DISTRICT COURT TO PUNISH THE
     PETITIONER UPON SUCH FACTS, THE GUIDELINES ARE
     UNCONSTITUTIONAL AS APPLIED.

The United States Constitution gurantees each defendant a trial
by jury wherein no punishment is imposed until a jury determines the
defendant guilty of particular conduct beyond a reasonable doubt.See
U.S. Const. Amends. V, VI. At odds with that system is the Sentencing
Reform Act of 1984, which sets up a system that appears to allow a
District Court to sentence or punish a defendant based upon conduct
that is not admitted or proved beyond a reasonable doubt. (Title II
of The Comprehensive Crime Control Act of 1984); U.S.S.G. Chapter 1,
Part A, intro., comment (3).

In addition to a base sentencing range established by reference
to the jury verdict alone, the guidelines prescribe enhanced senten-
cing ranges based on sentencing factors that are determined by a Judge
after trial, by a preponderance of the evidence. U.S.S.G. Chapter 1,
Part A. introduction, comment (2) and (4)(a). In his dissent in HARRIS
v. UNITED STATES, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), Justice
Thomas reminded us that due process requires that every fact necessary
to constitute a crime must be found beyond a reasonable doubt by a
jury if that right is not waived. Id. at 2424 (Thomas, J., dissenting),
citing In re Winship, 397 U.S. 358, 364, 25 L.Ed. 2d 368, 90 S.Ct.
1068 (1970). Society has long recognized necessary link between punish-
ment and crime. HARRIS, 122 S.Ct. at 2424 (Thomas, J., dissenting),
citing APPRINDI v. NEW JERSEY, 530 U.S. 466, 478, 120 S.Ct. 2348 (2000)
("The defendant's ability to predict with certainty the judgement from
the face of the felony indictment flowed from the invariable linkage

of punishment with crime"). "Why, after all, would anyone care if they
were convicted of murder, as opposed to manslaughter, but for the in-
creased penalties for the former offense, which in turn reflect the
greater moral opprobrium society attaches to the act?" HARRIS, 122 S.Ct
at 2424 (Thomas, J., dissenting).

If a Statue  annexes a higher degree of punishment based on cer-
tain circumstances, exposing a defendant to that higher degree of pun-
ishment requires that those circumstances be charged in the indictment
and proved beyond a reasonable doubt. APPRENDI, 530 U.S. at 480, ( quot-
ing J. Archbold, Pleading and Evidence in Criminal Cases (15th ed.1862)).

For example, U.S.S.G. § 1B1.3, gives an expansive interpretation
of "Relevant Conduct." Under it, ordinary Crimes such as perjury, subor-
nation of perjury, escape, and obstruction of justice arguably become
"relevant conduct" or sentencing factors." According to Guidelines the-
orist, these semantics are enough to exempt such criminal conduct from
the provisions of the 5th and 6th Amendments to the U.S. Constitution
even though persons can be sent to prison for months and even years by
proving with "reliable information" (not trial quality evidence) to a
judge (not a jury) that is is more probably true than not true (not
"beyond a reasonable doubt") that the defendant committed such "rele-
vant conduct" (not crime).

⊦ : the Sentencing guidelines cannot supersede the U.S. Constitu-
tion. The guidelines should not be used to accomplish an "end-run"
around the fundamental right to trial by a jury and to usurp the role
of the jury. If the jury finds a defendant guilty of a range of drug
amount that could be as low as Five Kilograms, the District Court
should not be permitted to use the sentencing guidelines to ignore that
verdict, take the jury's role, find responsibility for a higher Drug
amount and punish based upon extra-jury determination at a standard

lower than proof beyond a reasonable doubt. See: ANDERSON v. FULLER,
455 U.S. 1028, 1032 (1982)(Burger C.J., dissenting)(nothing that Fed-
eral Courts should not usurp the function of a jury in finding facts).

Recently, the Supreme Court has begun to relize the fundamental
defects in way our system determines sentences for criminal defendants
in a series of decisions. In APPRENDI v. NEW JERSEY, 530 U.S. 466, 490
(200), the Supreme Court held that "other than the fact of a prior con-
viction, any fact that increases the penalty for crime beyond the pre-
cribed statutory maximum must be submitted to a jury and proved beyond
reasonable doubt." In RING v. ARIZONA, 536 U.S. 584 (2002), the Supreme
Court clarified and reaffirmed this rule. The RING holding is straight-
forward and clear-cut: Yhe APPRENDI rule applies to any aggravating fact
necessary to expose a defendant to punishment beyond an otherwise manda-
tory statutory limit. Id. As recently observed by the UNITED STATES Dis-
trict Court for the district of Massachusetts regarding the Sentencing
Guidelines, "the Sixth Amendment gurantee of trial by jury has been
eroded as never before in the history of our nation, while the institu-
tional judiciary complacently slips into forms of expression and modes
of thought that unconsciously reinforce the Department agenda in a
powerfully Orwellian way. UNITED STATES v. GREEN, 2004 U.S. Dist.LEXIS
11292, *13 (D.Mass.2004).

After APPRENDI, the various courts throughout the country assumed
the term "statutory maximum" refered to in APPRENDI and RING, was the
maximum sentence set forth under the statute listed in the indictment.
The Courts have assumed that the term "statutory maximum" does not ap-
ply to the various sentencing thresholds established under the Federal
Sentencing Guidelines. The Supreme Court's decision in BLAKELY v.WASH-
INGTON, 124 S.Ct. 2531, 159 L.Ed. 2d. 403 (2004) changes that and in-

-15-

dicates that the courts have been wrong, holding that "the 'statutory maximum' for APPRENDI, purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*** When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to punishment." BLAKELY, 124 S.CT. 2537 (emphasis in original).

The BLAKELY decision not only clarifies what was meant by the term "statutory maximum," but also calls into question the constitutionality of current sentencing practices in Federal Court. the Court noted that the rule announced in APPRENDI reflected two longstanding tenets of common-law criminal jurisprudence: "that the truth of every accusation against the defendant should afterwards be confirmed by a unanimous [Jury Verdict] and that an accusation which lacks any particular fact which the law makes essential to the punishment is...no accusation within the requirements of the common law and it is no accusation in reason." Id. at 2536. The Court then noted the principle in American Jurisprudence that "'every fact which 'is legally essential to the punishment' must be charged in the indictment and proved to a jury." Id.

The Petitioner submits that compliance with the Sixth Amendment requires "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" to be proved beyond a reasonable doubt. APPRENDI, 530 U.S. at 490. The prescribed '"statutory maximum' for APPRENDI purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." BLAKELY, 124 S.Ct. at 2536. The jury verdict alone-or the defendant's admission alone-"must authorize the sentence. "Id. Therefore, the upper bound of the appropriate guideline range, based on facts proven to a jury beyond a reasonable doubt or admitted by the

defendant, establishes the relevant statutory maximum for APPRENDI pur-
poses. Under the Federal Sentencing Guidelines, Drug Amounts, enhance-
ments based on a specific offense characteristic, and upward departures
all have the same effect-namely, they all increase the maximum permissi-
ble sentence under the guidelines. A Judge's reliance on such factors
at sentencing is therefore unconstitutional.

For example, if a defendant is convicted of an offense under 21
U.S.C. §841 involving 500 grams or more of cocaine, the "Jury Verdict
Alone" establishes a base offense level of 26 and a sentencing range of
63 to 150 months imprisonment, depending on the severity of the defen-
dant's prior criminal record. See: U.S.S.G. § 2D1.1(c)(7)(establishing
base offense level of 26 based on "at least 500 grams of cocaine,") It
is true that a defendant's sentence cannot exceed a second cap of 40
years imprisonment found in § 841(b)(1)(B). However, the critical point
here is that the top of the statutory range of imprisonment under the
guidelines is the maximum sentence authorized based solely on the guilty
verdict. According to BLAKELY, a sentencing court has no discretion to
exceed that limit.

In the days following BLAKELY, the Seventh and Eight Circuit and
many District Courts have held the Federal Sentencing Guidelines to be
unconstitutional as applied. See UNITED STATES v. BOOKER, 375 F.3d 508
(7th Cir. 2004)(vacating defendant's sentence after BLAKELY because
sentencing enhancements violated the defendant's Sixth Amendment);
UNITED STATES v. MOONEY, 2004 WL 1636960 (8th Cir. 2004); UNITED STATES
v. KING, 238 F.Supp.2d 1276 (Middle Dist. Fla. 2004) UNITED STATES v.
LANDGARTEN, 2004 WL 1576516 (E.D.N.Y. 2004); UNITED STATES v. CROXFORD,
2004 WL 1521560 (S. Utah 2004)(CROXFORD I"); UNITED STATES v. LAMOREAUX,
2004 WL 1557283 (D. Mo. 2004); UNITED STATES v. MEDAS, 2004 WL 1498183
(E.D.N.Y. 2004);UNITED STATES v. SHAMBLIN, 2004 WL 1468561 (S.D.W.VA

2004); UNITED STATES v. GREEN, 2004 U.S.Dist. LEXIS 11292 (D.Mass. 2004)

The decision issued in BOOKER followed that issued in BLAKELY. In BOOKER, the court was quite clear that no sentencing enhancement, other than a fact of prior conviction, may be issued without submission to a jury if the said enhancement increases the penalty for a crime beyond the statutory maximum. BOOKER, 375 F.3d at 510. The statutory maximum was stated to be the maximum sentence a judge may imposes "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. The defendant in BOOKER was convicted of possession with intent to distribute at least 50 grams of cocaine base, leading the court to state that the greatest base offense level could then receive was 32, based upon the same 50 grams of cocaine base. Id. In UNITED STATES v. LEACH, 1003 U.S. Dist. LEXIS 13291 (E.D.Pa.2004), the court went so far as to state that criminal history points added for committing the instant offense while on probation could not be supported under BLAKELY, as no evidence was presented to the jury that the defendant committed the instant crime while on probation.

Contrary to the decision of the aforementioned courts, the Petitioner acknowledges that this circuit has found that the decision in BLAKELY, neither applies to nor invalidates the Federal Sentencing Guidelines. UNITED STATES v. HAMMOUD, 378 F.#d 426 (4th Cir. 2004). The Petitioner submits, however, that this case was improperly decided, in that the decision in BLAKELY, does apply to the Federal Sentencing Guidelines.

While the holding in BLAKELY, may not apply directly to the Federal Sentencing Guidelines, the mere fact that the invalidated state guidelines in BLAKELY, are nearly identical to the Federal Guidelines mandates that the holding be applied logically to the Federal Guidelines. The Petitioner submits that the reasoning from BLAKELY, is

easily transferrable to the Federal Guidelines. That reasoning is that
any fact that increases an offender's sentence beyond the statutory
maximum must be submitted to and proved to a jury beyond a reasonable
doubt. The ruling in BLAKELY, when combined with the fact that the
Sentencing Guidelines admittedly "fetter the discretion of sentencing
judges", dictate that BLAKELY, must be applied to the Federal Senten-
cing Guidelines. See: MISTRETTA v. UNITED STATES, 488 U.S. 361, 396
(1989).

    The mere fact that Congress has delegated sentencing authority to
the courts does not mean that the courts can unilaterally disobey the
Constitution of the United States. In delegating this authority, Con-
gress has still established a sentencing structure akin to the Senten-
cing system utilized by Washington and at issue in BLAKELY. Like Wash-
ington's sentencing structure, an offense in the Federal Criminal Sys-
tem is classified based upon the seriousness of the crime committed,
with sentencing departures allowable based upon aggravating factors.
For example, violations of 21 U.S.C. § 841 are classified depending the
amount of drugs involved in the crime, with potential statutory max-
imums increasing as drug amounts increase. Once the crime has been
classified, a judge can depart from the statutory range based upon
aggravating factors as contained in the Sentencing Guidelines found by
the judge. Therefore, although sentencing discretion has been nominally
given to the judiciary, after the Court's decision in BLAKELY, this
discretion is clearly limited to those facts submitted to and proved to
a jury beyond a reasonable doubt.

    In UNITED STATES v. PINEIRO, 377 F.3d 464 (5th Cir. 2004), the
Fifth Circuit admitted that Justice Scalia's disclaimer that the Court
in BLAKELY, was not ruling on the Federal Guidelines "does not by it-
self mean BLAKELY, carries no import for the Federal Guidelines, for
the binding

force of a Supreme Court decision is ordinarily not limited to the
particular set of facts that produces it." Id. at 469. The court
went on to say that "Undeniably, Blakely strikes hard at the pre-
vailing understanding of the Guidelines." Id. at 470.

Clearly, this court must look beyond the factual facade that
the ruling in Blakely does not apply to the federal Sentencing
Guidelines. According to the logic of this circuit, a ruling that
segregated restaurants are unconstitutional would not carry over
into any other public area, such as hotels, unless specifically
dictated by the Supreme Court. Such logic can not stand. The de-
cision in Blakely must be deemed to apply to the federal Sentencing
Guidelines.

The Petitioner recognizes that not only must his
petition pursuant to 28 U.S.C. § 2255 be supported by a new rule
of constitutional law, but that this new rule of law must have
been made expressly retroactively applicable to cases on review.
Tyler v. Cain, 533 U.S. 656, 121 S.Ct. 2478 (2001). The Petitioner
recognizes that the Supreme Court has yet to expressly rule on the
retroactivity of the rule of law announced in Blakely. However,
the Petitioner submits that applying existing case law, the Blakely
decision clearly applies retroactively. Furthermore, the Petitioner
notes that the instant argument is being made, without an express
ruling on retroactivity, so as to preserve the instant issue in
anticipation of an impending decision by the Supreme Court on the
issue of retroactivity, as well as to insure that the instant pet-
ition is filed within the one year filing deadline as dictated by

28 U.S.C. § 2244(b)(3)(C).

The Petitioner submits that the instant right conferred by the Court in Blakely is one that has been made retroactively applicable to cases on review. Although the Blakely decision did not expressly announce its retroactivity, the significance of the holding combined with the Court's decision in Teague v. Lane, 489 U.S. 288, 103 L.Ed.2d 344, 109 S.Ct. 1060 (1989), show that the Blakely, ruling must be retroactive to cases on review. In her dissent in Blakely, Justice O'Connor noted that "all criminal sentences imposed under the federal and state guidelines since Apprendi was decision in 2000 arguably remain open to coloateral attack" because of the Court's decision in Teague. In Teague, the Court noted that new rules of constitutional procedure would apply if the new rule involes "those procedures that are implicit in the concept of ordered liberty." Teague, 489 U.S. at 311. Such rules vindicate two discreet concerns: the fundamental fairness of the underlying procedure; and the accuracy of that underlying proceeding. Saffle v. Parks, 494 U.S. 484, 495 (1990).

Unfortunately, a five justice majority has recently stated that the decision in Ring v. Arizona, 536 U.S. 610 (2002) applying Apprendi to Arizona's capital sentencing scheme does not apply retroactively under Teague. Schriro v. Summerlin, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004). The Court noted that while the rule at issue was fundamental, it was not one "without which the likelihood of an accurate conviction is seriously diminished." Id. at 2521(quoting Teague, 489 U.S. at 313).

Fortunately, in Schriro, the majority's analysis was limited to the Ring rule, as "Arizona law already required aggravating factors to be proved beyond a reasonable doubt." Schriro, 124 S. Ct. at 2521, n.1(citing State v. Jordan, 126 Ariz. 283, 286, 614 P.2d 825, 9292 (1980). Therefore, the majority's opinion that "judicial factfinding so 'seriously diminishes accuracy' is simply too equivocal" to meet the second prong of Teague's exception to the rule against retroactivity does not apply to the instant rule under analysis. Schriro, 124 S.Ct. at 2522. The rule at issue in the instant matter deals with judicial factfinding under the diluted preponderance of the evidence standard.

The shift from the preponderance of the evidence standard to a standard beyond a reasonable doubt is of critical importance in the American justice system. In Cage v. Louisiana, the Court emphasized the vital role of the reasonable doubt standard in avoiding convictions based upon factual error:

> [T]he Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970)... This reasonable doubt standard "plays a vital role in the American scheme of criminal procedure, Id. at 363. Among other things, it is a prime instrument for reducing the risk of convictions resting on factual error.

498 U.S. 39, 39-40 (1990). Winship itself makes clear that the requirement of proof beyond a reasonable doubt is grounded upon

accuracy concerns:

> The requirement of proof beyond a reasonable doubt has
> this vital role in our criminal procedure for cogent re-
> asons. The accused during a Criminal Prosecution has at
> stake interest of immense importance, both because of the
> certainty that he would be stigmatized by the conviction.
> Accordingly, a society that values the good name and free-
> dom of every individual should not condemn a man for com-
> mision of a crime when there is reasonable doubt about his
> guilt.

397 U.S. at 364. the Court in <u>WINSHIP</u> specifically rejected the mar-
gin of error permitted by a preponderance standard:

> There is always in litigation a margin of error, represen-
> ting error in factfindings which both parties must take
> into account. Where one party has at stake an interest of
> transcending value - as a criminal defendant his liberty-
> this margin of error is reduced as to him by the process of
> placing on the other party the burden of...persuading the
> factfinder at the conclusion of the trial of his guilt be-
> yond a reasonable doubt. Due proces commands that no man
> shall lose his liberty unless the Government has borne the
> burden of...convincing the factfinder of his guilt. To this
> end, the reasonable doubt standard is indispensable, for it
> impresses on the trier of fact the necessity of reaching a
> subjective state of certitude of the facts in issue.

397 U.S. at 364. Importantly, the Supreme Court used its decision in _Ivan V. v. City of New York_, 407 U.S. 203, 205 (1972) to give _Winship_ retroactive effect, as "the major purpose of the constitutional standard of proof beyond a reasonable doubt announced in _Winship_ was to overcome an aspect of a criminal trial that substantially impairs the truth-finding function."

While it seems clear that the rules announced in _Apprendi_ and most recently in _Blakely_ must be applied retroactively, the Ninth Circuit disagreed. In _United States v. Sanchez-Cervantes_, 282 F.3d 664 (2002), the Ninth Circuit concluded that the _Apprendi_ rule should not be applied retroactively. However, in _Sanchez-Cervantes_, the court's decision focused upon whether the _Apprendi_ rule was to be considered a fundamental right. _Id._ at 670. The court determined that the _Apprendi_ rule was not fundamental within the bounds of _Teague_, meaning that the court did not properly evaluate the rule's effect on the accuracy of the proceedings. _Id._ at 669-671. Futhermore, in its brief analysis on the issue of accuracy, the court in _Sanchez-Cervantes_ dealt with the accuracy of convictions and not the accuracy of sentences. _Id._ at 669. As noted, however, the Supreme Court held that the _Apprendi_ rule was one involving the fundamental fairness of a proceeding. _Shriro_, 124 S.Ct. at 2521. Therefore, the decision in _Sanchez-Cervantes_ clearly was in error in reviewing the retroactivity of _Apprendi_ rule, and can not be considered good law.

In this case, the result of the new rule of _Blakely_-that punishments not based upon jury verdicts or admissions will be

vacated—was not dictated by precedent that existed at the time the Petitioner's conviction became final. As a result, in light of the new Blakely rule, the Court's holding of Teague, and the timing of the Petitioner's case, the rule of Blakely must be applied retroactively to the Petitioner's sentencing.

Furthermore, a failure to apply the Blakely decision retroactively would create a rift in federal sentencing in violation of the Eighth Amendment to the United States Constitution. The Eighth Amendment succinctly prohibits "exessive" sanctions. Atkins v. Virginia, 122 S.Ct. 2242,2246 (2002). It provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." In Weems v. United States, 217 U.S. 349 (1910), the U.S. Supreme Court held that a punishment of 12 years jailed in irons at hard and painful labor for the crime of falsifying records was excessive. The Court explained "that it is a precept of justice that punishment for crime should be graduated and proportioned to the offense." Id. at 367.

The High Court has repeatedly applied the proportionality precept in later cases interpreting the Eighth Amendment. See Harmelin v. Michigan, 501 U.S. 957, 997-998 (1991). Thus, even though "imprisonment for ninety days is not, in the abstract, a punishment which is either cruel or unusual," it may not be imposed as a penalty for "the 'status' of narcotic addiction." Robinson v. California, 370 U.S. 660, 666 (1962), because such a sanction would be excessive, as Justice Stewart explained in

Robinson, "Even one day in prison, would be cruel and unusual punishment for the 'crime' of having a common cold." Id. at 667.

In judging the propriety of sentences, the Supreme Court has traditionally looked to three criteria in evaluating the proportionality of the sentences issued: (1) The gravity of the offense and the harshness of the penalty; (2) The sentences imposed on other criminals in the same jurisdiction. SOLEM v. HELM, 463 U.S. 277, 292, 103 S.Ct. 3001; 77 L.Ed.2d 637 (1983). Importantly, the proportionality test does not require strict proportionality, but only forbids cases of 'gross' disproportionality. HARMELIN, 501 U.S. at 1001.

One can hardly imagine a more disproportionate sentencing scheme than allowing the Petitioner to serve a term of incarceration of 150 months while an individual who committed the exact same crime but did so with the benefit of the decision in BLAKELY, could receive as little as a 41 month term of incarceration. Clearly, such disproportionality is the exact reason why the Sentencing Guidelines where enacted. Therefore, it is obvious that BLAKELY must be applied retroactively to the instant case.

Accordingly, as Mr. Consalves sentence has been imposed in violation of his Constitutional Rights to a jury trial and due process of law, the Petitioner's sentence must be vacated and this matter remanded for re-sentencing consistent with findings of this Court and the Constitutional Principles embodied in the Fifth and Sixth Amendments.

CONCLUSION

The Petitioner is asking the Honorable Court to remand his case to the United States District Court and resentence him on the correct level for what he plead guilty to.

All counts were dismissed by the government except Count 1 of the first superceding indictment against the petitioner and Count 1, 50 grams to 200 grams of Methamphetamine is lever 26.

The Petitioner begs the honorable court to still award him the three level downward departure for acceptance of responsibility and three levels that the Court awarded him for substantial assistance to law enforcement under U,S.S.G. § 5k1.1.


Respectfully submitted,


Jason Apela Consalves

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

ELLIOT ENOKI
First Assistant U.S. Attorney

THOMAS MUEHLECK
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii  96850
Telephone:  541-2850

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 12 2003

at ____ o'clock and ____ min ____ M.
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 02-00176-08 DEA |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF PLEA AGREEMENT |
| | ) | |
| vs. | ) | Date: |
| | ) | Time: |
| JASON APELA GONSALVES, | ) | Chief Judge: Hon. David A. Ezra |
| aka "Jay,"                (08), | ) | |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OF PLEA AGREEMENT</u>

Pursuant to Rule 11 of the Federal Rules of Criminal

Procedure, the UNITED STATES OF AMERICA, by its attorney, the

United States Attorney for the District of Hawaii, and the

Defendant, JASON APELA GONSALVES, aka "Jay" and his attorney,

David F. Klein, have agreed upon the following:

1.  Defendant acknowledges that he has been charged in

the First Superseding Indictment with violating Title 21, United

States Code, Sections 841(a)(1), 843(b), and 846.

78

2.   Defendant has read the charges against him contained in the First Superseding Indictment, and those charges have been fully explained to him by his attorney.

3.   Defendant fully understands the nature and elements of the crimes with which he has been charged.

4.   Defendant will enter voluntary plea of guilty to Count 1 of the First Superseding Indictment charging him with conspiring to distribute and to possess with intent to distribute a quantity of methamphetamine in excess of 50 grams (Count 1). The prosecution agrees to move to dismiss the remaining counts of the First Superseding Indictment as to Defendant after sentencing.

5.   Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.   Defendant enters this plea because he is in fact guilty of conspiring to distribute a quantity of methamphetamine in excess of 50 grams as charged in Count 1 of the First Superseding Indictment, and agrees that this plea is voluntary and not the result of force or threats.

7.   Defendant understands that the penalties for the offense to which he is pleading guilty include:

2

a.  up to life imprisonment and a fine of up to
$4,000,000, plus a term of supervised release of not less than
five years and up to life as to Count 1,

b.  a minimum term of imprisonment of ten years as
to Count 1, and

c.  At the discretion of the court, defendant may
also be denied any or all federal benefits, as that term is
defined in 21 USC §862, (a) for up to five years if this is
defendant's first conviction of a federal or state offense
consisting of the distribution of controlled substances, or (b)
for up to ten years if this is defendant's second conviction of a
federal or state offense consisting of the distribution of
controlled substances.  If this is defendant's third or more
conviction of a federal or state offense consisting of the
distribution of controlled substances, the defendant is
permanently ineligible for all federal benefits, as that term is
defined in 21 USC §862(d).

In addition, the Court must impose a $100 special assessment as
to each count to which the Defendant is pleading guilty.
Defendant agrees to pay $100 for each count to which he is
pleading guilty to the District Court's Clerk's Office, to be
credited to said special assessments, before the commencement of
any portion of sentencing.  Defendant acknowledges that failure
to make such full advance payment in a form and manner acceptable

3

to the prosecution will allow, though not require, the
prosecution to withdraw from this agreement at its option.

    8.  Defendant admits the following facts and agrees
that they are not a detailed recitation, but merely an outline of
what happened in relation to the charge to which Defendant is
pleading guilty:

    During 2000 and 2001, the defendant was distributing
multiple ounce quantities of crystal methamphetamine weekly on
the Island of Oahu and Maui for Amako Malepeai.  The defendant
routinely received multiple ounce quantities of crystal
methamphetamine on credit from Amako Malepeai which he broke down
into smaller quantities and sold.  On one occasion the defendant
transported four pounds of crystal methamphetamine for Amako
Malepeai to Polotani Latu on Maui.  The defendant received
approximately $60,000 to $70,000 for the crystal methamphetamine
transported to Maui and returned the cash to Amako Malepeai.  In
2001 the defendant became involved in the distribution of crystal
methamphetamine for Tasi Malepeai.  The defendant routinely would
be fronted one-half pound quantities of crystal methamphetamine
from Tasi Malepeai during 2001 which would take the defendant two
days to distribute to customers.  On one occasion Tasi Malepeai
provided the defendant with a one pound quantity of crystal
methamphetamine which the defendant distributed.  ~~The defendant~~

4

41

~~one-half pound quantity of methamphetamine he received from Tasi Malepeai.~~

On January 30, 2002, the defendant was stopped by the Honolulu Police Department and found to be in possession of four ounces of crystal methamphetamine which had been provided by Tasi Malepeai. The defendant had intended to distribute the methamphetamine.

On April 24, 2002, the defendant possessed in his residence in Ewa Beach approximately one-half pound of crystal methamphetamine which the defendant intended to distribute. The methamphetamine had been provided to the defendant by Tasi Malepeai. When federal agents executed a search warrant on the defendant's residence, agents found the methamphetamine in the defendant's bedroom.

9. Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which the Defendant is pleading guilty adequately reflect the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

10. The Defendant is aware that he has the right to appeal the sentence imposed under Title 18, United States Code, Section 3742(a). Defendant knowingly waives the right to appeal, except as indicated in subparagraph "b" below, any sentence

5

within the maximum provided in the statute(s) of conviction or the manner in which that sentence was determined on any of the grounds set forth in Section 3742, or on any ground whatever, in exchange for the concessions made by the prosecution in this plea agreement.

    a.    The Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

    b.    If the Court in imposing sentence departs (as that term is used in Part K of the Sentencing Guidelines) upward from the guideline range determined by the Court to be applicable to the Defendant, the Defendant retains the right to appeal the upward departure portion of his sentence and the manner in which that portion was determined under Section 3742 and to challenge that portion of his sentence in a collateral attack.

    c.    The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

47

11.   The Defendant understands that the District Court in imposing sentence will be bound by the provisions of the Sentencing Guidelines.   Subject to the exceptions noted in the previous paragraph, the Defendant is surrendering his right to challenge any sentence within the statutory maximum, or the manner in which it was determined, including, but not limited to, a sentence that the Defendant perceives to be an incorrect application of the Guidelines.   The Defendant further agrees that there is no promise or guarantee of the applicability or nonapplicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

12.   The Defendant understands that pursuant to Guideline 6B1.1(c), this Agreement cannot be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary pursuant to Guideline 6A1.1. The Defendant understands that the Court will not accept an agreement unless the court determines that the remaining charges adequately reflect the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

13.   Defendant understands that by pleading guilty he surrenders certain rights, including the following:

7

a.  If Defendant persisted in a plea of not guilty
to the charges against him he would have the right to a public
and speedy trial.  The trial could be either a jury trial or a
trial by a judge sitting without a jury.  The Defendant has a
right to a jury trial.  However, in order that the trial be
conducted by the judge sitting without a jury, the Defendant, the
prosecution and the judge all must agree that the trial be
conducted by the judge without a jury.

b.  If the trial is a jury trial, the jury would
be composed of twelve laypersons selected at random.  Defendant
and his attorney would have a say in who the jurors would be by
removing prospective jurors for cause where actual bias or other
disqualification is shown, or without cause by exercising
peremptory challenges.  The jury would have to agree unanimously
before it could return a verdict of either guilty or not guilty.
The jury would be instructed that the Defendant is presumed
innocent, and that it could not convict him unless, after hearing
all the evidence, it was persuaded of his guilt beyond a
reasonable doubt.

c.  If the trial is held by a judge without a
jury, the judge would find the facts and determine, after hearing
all the evidence, whether or not he or she was persuaded of the
Defendant's guilt beyond a reasonable doubt.

8

d.  At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the Defendant.  Defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them.  In turn, Defendant could present witnesses and other evidence on his own behalf.  If the witnesses for the Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

e.  At a trial, the Defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

14.  Defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph.  Defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

15.  Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce Defendant to plead guilty.

16.  Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto. The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to

9

46

accept this Agreement since the Court is expressly not bound by stipulations between the parties.

17.  Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of Defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

18.  The Defendant agrees that he will fully cooperate with the United States.

a.  He agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests him to testify, including, but not limited to, any grand jury proceedings, trial proceedings involving codefendants and others indicted later in the investigation, and related civil proceedings.

b.  Defendant agrees to be available to speak with law enforcement officials and to representatives of the United States Attorney's Office at any time and to give truthful and complete answers at such meetings, but he understands he may have his counsel present at those conversations, if he so desires.

c.  Defendant agrees he will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crimes in this Indictment

10

or any subsequent charges related to this investigation, at which the prosecution requests him to testify.

        d.  Pursuant to § 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under § 1B1.8(b) of the Sentencing Guidelines.

        19.  In the event that the Defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after Defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case in chief in the trial of the Defendant in this matter.  Defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

        20.  Pursuant to Guideline Section 5K1.1 and Rule 35(b), Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the Defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense.  Pursuant to Title 18, United States Code,

Section 3553(e), the prosecution may also move the Court to impose a sentence below the level established by statute as a minimum sentence for Count 1 on the ground that Defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense. Defendant understands that:

       a.  The decision as to whether to make such a request or motion is entirely up to the prosecution.

       b.  This Agreement does not require the prosecution to make such a request or motion.

       c.  This Agreement confers neither any right upon the Defendant to have the prosecution make such a request or motion, nor any remedy to Defendant in the event the prosecution fails to make such a request or motion.

//

//

//

//

//

//

//

//

//

12

d.    Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines or to impose a sentence below the minimum level established by statute.

DATED:  Honolulu, Hawaii, _March 12, 2005_.

AGREED:

---

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

---

ELLIOT ENOKI
First Assistant U.S. Attorney

---

THOMAS MUEHLECK
Assistant U.S. Attorney

---

JASON APELA GONSALVES
Defendant

---

DAVID F. KLEIN
Attorney for Defendant

13

Sentencing transcript        Exhibit II

3

1          There is a plea agreement in this case.  The court is
2    ready to rule on that unless there is some objection from
3    counsel?
4          MR. MUEHLECK:  No.  We ask the court to keep the plea
5    agreement, Your Honor.
6          MR. KLEIN:  No objection, Your Honor.
7          THE COURT:  All right.  The court hereby accepts the
8    Rule 11(e)(1)(A) plea agreement entered into between the
9    parties in this case because I am satisfied that it does
10   adequately reflect the seriousness of the defendant's offense
11   behavior and does not undermine the statutory purposes of
12   sentencing.
13         There were no objections to the factual statements
14   contained in the presentence report and the court adopts that
15   as its findings of fact.
16         There were no objections to the presentence report's
17   conclusions as to the applicable guidelines; the court adopts
18   those.
19         The offense level is 37, the criminal history
20   category is one, the imprisonment range is 210 to 262 months,
21   probation is not available, five years of supervised release
22   and a fine of 20,000 to $4 million, and restitution is not an
23   issue in this case.
24         Now, there has been a Motion for Downward Departure
25   filed by the government for which the defendant has joined and

4

1    filed an additional request.  So I will hear from you first,
2    Mr. Muehleck.

3              MR. MUEHLECK:  Thank you, Your Honor.  Your Honor, we
4    made our motion based on --

5              THE COURT:  Just a minute.  I need a pen.  Just a
6    minute.

7              Yeah.  Mr. Muehleck?

8              MR. MUEHLECK:  Your Honor, we made our motion based
9    upon the defendant's cooperation at the time of his arrest.
10   He was one of the first to be arrested and he cooperated
11   immediately upon his arrest, pretty much gave it up.  At that
12   point the FBI was able to represent in a generic fashion that
13   they had a cooperating defendant in the case.

14             Subsequent to that -- without naming the individual
15   that was cooperating.  Subsequent to that there were people
16   that wanted to be debriefed and did enter into a plea
17   agreement.  In particular, Mr. Tasi Malepeai was one of the
18   ones that was represented by Mr. Green; Mr. Green determined
19   that there were people cooperating and he immediately asked to
20   have his client debriefed and subsequent to that, court is·
21   aware, entered into a plea agreement, pled guilty.  There have
22   been no defendants in this case who have gone to trial.  There
23   is one defendant left, Your Honor.  And we think a downward
24   departure to represent the defendant's and to accommodate and
25   acknowledge his cooperation is appropriate.



```
1            The defendant's guideline is 37.  We'd ask the court
2    to go down to a level 35 and sentence at the bottom of that
3    guideline range, Your Honor.  Thank you.
4            THE COURT:  All right.  A level 35 would result in a
5    sentence of 168 to 210 months.
6            MR. MUEHLECK:  Yes, Your Honor, we did that realizing
7    that we started from -- if we start from the middle range of
8    37, that's approximately 240 some months, which is 20 years.
9            THE COURT:  20 years.
10           MR. MUEHLECK:  And down two levels to that would be
11   approximately 13 years, somewhere around there, Judge.
12           THE COURT:  Yeah, it's a huge difference.
13           MR. MUEHLECK:  33 percent --
14           THE COURT:  We're still talking --
15           MR. MUEHLECK:  -- reduction.
16           THE COURT:  Still talking about a lot of time,
17   though.
18           MR. MUEHLECK:  There's a lot of time and there's a
19   lot of reason for that time, Judge, if you look at the amount
20   of drugs involved, defendant had a weapon.  Even after he was
21   stopped in January he continued, apparently, in the endeavors
22   that he was in, as referenced by the search warrants.  And
23   what's not mentioned in the presentence report is that Agent
24   Brady called the defendant after his arrest, after his arrest
25   by the Honolulu police in January and gave him an opportunity.
```

CERTIFICATE   OF   SERVICE

      I HEREBY CERTIFY that a true and correct copy of this foregoing instrument has been mailed postage prepaid on this_____ day of_____ 2005, to the _AUSA Thomas Muehleck_ At _300 Ala Moana Boulevard   Honolulu, HI. 96850_ by depositing same in the legal mail box at _FCI Ft. Dix_ ____ _New Jersey_ _____ institution.


Jason Apela Consalves
Reg # 88961-022
P.O. Box 7000
Fort Dix, N.J. 08640