1                 UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF HAWAII

2

     UNITED STATES OF AMERICA,   )   CR No. 02-00176DAE

3                          )

             Plaintiff,   )   Honolulu, Hawaii

4                          )   March 12, 2003

                         )

5            v.           )

                         )

6      JASON A. GONSALVES,     )

                         )

7             Defendant.   )

                         )

8     ─────────────────────────────

9   TRANSCRIPT OF MOTION WITHDRAW NOT GUILTY PLEA AND TO PLEAD ANEW
          BEFORE THE HONORABLE BARRY M. KURREN

10          UNITED STATES MAGISTRATE JUDGE.

11   APPEARANCES:

12   For the Plaintiffs:       US ATTORNEY'S OFFICE
                       By:  TOM MUEHLECK, ESQ.

13                        300 Ala Moana Boulevard, #6100
                       Honolulu, Hawaii 96850

14

    For the Defendant:        DAVID KLEIN, ESQ.

15                        841 Bishop Street, #2116
                       Honolulu, Hawaii 96813

16

17

18   Transcriber:             Jessica B. Cahill
                       P.O. Box 1652

19                        Wailuku, Maui, Hawaii 96793
                       Telephone: (808)244-0776

20

21

22

23   Proceedings recorded by electronic sound recording, transcript
    produced by transcription service

24

25

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 0 4 2005

at _____ o'clock and _____ min. ___M
WALTER A.Y.H. CHINN, CLERK

ORIGINAL

EXHIBIT "B"

1            THE CLERK:  All rise.  Court is now in session.  You

2    may be seated.  Criminal number 02-00176DAE, USA versus

3    defendant number eight Jason Apela Gonsalves.  Motion to

4    withdraw not guilty plea and to plead anew.

5            MR. MUEHLECK:  Tom Muehleck, for the United States.

6    Good afternoon, your Honor.

7            THE COURT:  Yes, good afternoon.

8            MR. KLEIN:  Good afternoon, your Honor, David Klein

9    appearing on behalf of Jason Gonsalves who is present.

10           THE COURT:  Yes, good afternoon.  And, Mr. Klein, I

11   understand Mr. Gonsalves is at this time prepared to withdraw

12   his guilty plea -- I mean his not guilty plea, and to enter a --

13   a guilty plea pursuant to a plea agreement in this case.

14           MR. KLEIN:  That is correct, your Honor.

15           THE COURT:  And does he also consent to entering his

16   plea before a U.S. Magistrate Judge?

17           MR. KLEIN:  Yes, he does, your Honor.

18           THE COURT:  Okay.  Mr. Gonsalves, before the Court can

19   accept your guilty plea I must know that you understand what you

20   are doing, and that you are pleading guilty freely and

21   voluntarily.  In order for me to make this determination I will

22   be asking you a number of questions.  If you do not understand

23   any of the questions that I ask please let me know.  Okay.  I'll

24   have you sworn in at the outset.

25                        JASON GONSALVES

1    was called by the Court and after having been first duly sworn

2    was examined and testified as follows:

3               THE CLERK:  Thank you.

4               THE COURT:  Please state your full name.

5               THE DEFENDANT:  Jason Apela Gonsalves.

6               THE COURT:  Okay.  You need to talk more directly into

7    the microphone.  And, Mr. Gonsalves, how old are you?

8               THE DEFENDANT:  Twenty-six.

9               THE COURT:  And how far did you go in school?

10              THE DEFENDANT:  Um, to the 11th grade.

11              THE COURT:  Okay.  Have you taken any medication,

12   alcohol or drugs of any kind today?

13              THE DEFENDANT:  No, your Honor.

14              THE COURT:  Do you feel well and alert today?

15              THE DEFENDANT:  Yes, your Honor.

16              THE COURT:  Do you understand what you are doing here

17   this afternoon?

18              THE DEFENDANT:  Yes, your Honor.

19              THE COURT:  And -- and -- and how would you describe

20   the purpose of this hearing this afternoon?  Why are you in

21   Court this afternoon?

22              THE DEFENDANT:  Um, I'm here to plead my guilt.

23              THE COURT:  Okay.  Have you been treated recently for

24   any mental illness or addiction to narcotic drugs?

25              THE DEFENDANT:  No, your Honor.

1          THE DEFENDANT:  Mr. Klein, I take it to the best of
2    your knowledge Mr. Gonsalves is fully competent to enter a valid
3    plea in this case?

4          MR. KLEIN:  Yes, your Honor.

5          THE COURT:  Now, Mr. Gonsalves, if you choose to enter
6    a guilty plea you have the right to enter that plea before a
7    U.S. District Judge.  In this case it is Judge Ezra.  If you
8    consent, however, you may enter your plea here before me as a
9    U.S. Magistrate Judge.  We have two different levels of judges
10   in the U.S. District Court, and the U.S. District Judges are the
11   more senior judges of the -- of the -- in U.S. District Court,
12   and Judge Ezra is the U.S. District Judge assigned to your case.
13   But as I indicated you may consent to enter your -- entering
14   your plea before a U.S. Magistrate Judge.

15          I should point this out though.  That if you enter
16   your plea before me as a U.S. Magistrate Judge, it still will be
17   Judge Ezra, a U.S. District Judge who will sentence you at a
18   later hearing.  Do -- do you understand that?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Do you consent to enter your plea before a
21   U.S. Magistrate Judge, and to waive or give up your right to
22   enter your plea before a U.S. District Judge?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Okay, and I have a form entitled consent
25   to Rule 11 plea in a felony case before a United States

 1  Magistrate Judge before me.  Is this your signature that appears
 2  in the second page of this document?
 3            THE DEFENDANT:  Yes, your Honor.
 4            THE COURT:  And did you have an opportunity to read it
 5  and review it with Mr. Klein before you signed the consent form?
 6            THE DEFENDANT:  Yes, I have, your Honor.
 7            THE COURT:  And do -- and do you understand everything
 8  that is in this consent form?
 9            THE DEFENDANT:  Yes, I do, your Honor.
10            THE COURT:  And, Mr. Klein, are you satisfied that Mr.
11  Gonsalves understands his rights in this regard?
12            MR. KLEIN:  Yes, your Honor.
13            THE COURT:  Okay.  Mr. Gonsalves, have you received a
14  copy of the indictment pending against you?  That is the written
15  charges made against you in this case?
16            THE DEFENDANT:  Yes, your Honor.
17            THE COURT:  Now have you reviewed all of the charges
18  and all of the facts surrounding the charges with Mr. Klein?
19            THE DEFENDANT:  Yes, your Honor.
20            THE COURT:  Are you satisfied with the representation
21  you've received from Mr. Klein in this case?
22            THE DEFENDANT:  Yes, your Honor.
23            THE COURT:  And, Mr. Klein, are your client's actions
24  here today and his guilty plea pursuant to your advice and
25  recommendation?

```
 1              MR. KLEIN:  Yes, your Honor.

 2              THE COURT:  And, Mr. Gonsalves, I also have before me

 3    the original of a memorandum of plea agreement.  Let me ask you

 4    first, is this your signature that is on the last page of the

 5    plea agreement?

 6              THE DEFENDANT:  Yes, your Honor.

 7              THE COURT:  And did you have an opportunity to review

 8    the plea agreement before you signed it?

 9              THE DEFENDANT:  Yes, I have, your Honor.

10              THE COURT:  Did you also have an opportunity to fully

11    discuss the agreement with Mr. Klein before you signed the plea

12    agreement?

13              THE DEFENDANT:  Yes, your Honor.

14              THE COURT:  Do you understand all of the terms of the

15    plea agreement in this case?

16              THE DEFENDANT:  Um, yes, your Honor.

17              THE COURT:  Okay, and does this -- does this plea

18    agreement cover every aspect of the agreement that you have with

19    the Government in this case?

20              THE DEFENDANT:  Yes, your Honor.

21              THE COURT:  Has anyone made any other promise, or a

22    different promise or assurance to you in an effort to induce you

23    to plead guilty in this case?

24              THE DEFENDANT:  No, your Honor.

25              THE COURT:  Has anyone attempted in any way to force
```

1  you to plead guilty, or to pressure you or threaten you in any
2  way?

3          THE DEFENDANT:  No, your Honor.

4          THE COURT:  Mr. Muehleck, would you summarize the
5  major terms of the agreement between the Government and the
6  defendant in this case?

7          MR. MUEHLECK:  The plea agreement -- the plea
8  agreement requires the defendant to plead guilty to Count I of
9  the first superseding indictment that is to conspiracy to
10 possess with an intent to distribute more than 50 grams of
11 methamphetamine and salts or salts of its isomers.

12          The defendant is also required in accordance with the
13 plea agreement to waive his appellate rights, that is to give up
14 his right under Title 18, United States Code, Section 3742, to
15 challenge the sentence, to challenge the way the sentence is
16 computed, to -- to give up his right to collaterally attack the
17 sentence under Tile 28, United States Code, Section 2255, and
18 basically give up his right to appeal.

19          The defendant understands that he only retains the
20 right to challenge the way the sentence is computed or challenge
21 the sentence, I should say, if the Court at sentencing departs
22 above the guideline range.  His departure is defined by the
23 Sentencing Guidelines Commission's Manual.  And he may challenge
24 the sentence based upon ineffective assistance of counsel.  But
25 in all other respects the defendant has agreed per this

1  agreement to give up his right to appeal.  The defendant
2  understands the United States retains its right to appeal the
3  sentence.

4       The defendant agrees to cooperate with the United
5  States, to be truthful during debriefings by Federal agents, to
6  waive his Fifth Amendment Right if called as a witness before
7  the Grand Jury by the United States, or called as a witness by
8  the United States at trial, agrees to testify truthfully and
9  completely at trial and at the Grand Jury.

10      The defendant understands that there has been no
11 promise made to him that the United States will file a motion
12 for a downward departure based upon substantial assistance with
13 Federal authorities.  That is a downward departure from the
14 sentencing guidelines -- the sentencing guidelines or -- or the
15 guideline sentence, I should say, or from the mandatory minimum
16 based upon substantial assistance.  The defendant under -- that
17 -- that such a motion is made solely within the discretion, or
18 is -- or is -- whether or not to make such a motion is solely
19 within the discretion of the United States Attorney's Office.

20      The defendant further understands that if the United
21 States makes such a motion it is solely within the Court's
22 discretion, that is Chief Judge Ezra's discretion to grant or
23 deny such a motion, and if granted what relief, if any, to be
24 given.

25      The defendant understands that there has been no

1   assurances that the United States will make such a motion.  He

2   understands he has no contractual right to expect such a motion

3   to be made.

4          The United States agrees, however, as part of the plea

5   agreement to dismiss the outstanding charges from the -- in the

6   first superseding indictment -- the remaining outstanding

7   charges in the first superseding indictment at the time of

8   sentencing.  In all other respects, I -- I think this covers the

9   major provisions of the plea agreement, your Honor.  There are

10  -- there are -- there is a factual basis in the mandatory

11  minimum sentence and the explanation of the rights he gives up,

12  but those are -- those are other provisions.  I think these are

13  the mandatory provisions --

14          THE COURT:  Okay.  The main --

15          MR. MUEHLECK:  -- or the major provisions I should

16  say.

17          THE COURT:  Mr. Gonsalves, do you understand

18  everything that Mr. Muehleck just said with regard to the

19  agreement between you and the Government in this case?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  And does this accurately state the

22  agreement that you have with the Government in this case?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Let me just cover a couple of these points

25  so that I'm sure you understand.  First, on the waiver of

1    appeal, do you understand that ordinarily in a criminal case if

2    you are not happy with the decision that is made against you in

3    the District Court that you could ask a higher court to review

4    that decision?  Do you understand that?

5             THE DEFENDANT:  Yes, your Honor.

6             THE COURT:  However, by this plea agreement you are

7    essentially giving up that right except in two very narrow

8    circumstances, and they are if -- if Judge Ezra should go higher

9    than what the sentencing guidelines call for.  If he -- if he --

10   if the sentencing guideline range is determined in your case,

11   and he goes higher than that you -- you could challenge that --

12   that portion of the sentence that is higher than the guidelines

13   in the -- in the Court of Appeals.

14            Or in a collateral proceeding after this case is all

15   over you could challenge your sentence if your attorney is

16   ineffective in representing you.  But if neither of those

17   circumstances occur you are -- you will not be able to challenge

18   the sentence that is imposed in your case.  Do you understand

19   that?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  So that means this, if Judge Ezra should

22   stay within the guideline range and -- and -- and -- and let us

23   assume that he does that, but he imposes a sentence you're not

24   happy with that you think is way too severe in your case, but he

25   stays within the guideline range, and your attorney is not

 1   ineffective in representing you that's the end of -- of the

 2   case.  It cannot be challenged, it cannot be reviewed by a

 3   higher court.  Do you understand that?

 4              THE DEFENDANT:  Yes, your Honor.

 5              THE COURT:  Okay.  Now the second point that Mr.

 6   Muehleck brought up that I want to review with you is on the

 7   matter of substantial assistance or cooperation with the

 8   Government.  And as I understand the agreement that you have

 9   with the Government that -- that you are agreeing to provide

10   information as requested to the -- to the Government and testify

11   in various proceedings if requested to do so.  You understand

12   that?

13              THE DEFENDANT:  Yes, your Honor.

14              THE COURT:  And if the Government determines that you

15   have provided substantial assistance to the Government by this

16   cooperation the Government may ask Judge Ezra to go lower in the

17   sentence against you.  Do you understand that?

18              THE DEFENDANT:  Yes, your Honor.

19              THE COURT:  But this is a matter that's solely within

20   the discretion of the Government, that you can't demand that

21   they make that request.  That it is up to the Government to

22   decide whether or not they will ask Judge Ezra to go lower in

23   the sentence against you.  Do you understand that?

24              THE DEFENDANT:  Yes, your Honor.

25              THE COURT:  And then the final point on this is that

1  regardless of whether the Government makes that request it will

2  be up to Judge Ezra to determine what the sentence is in your

3  case in the final analysis.  Do you understand that?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  The plea agreement is as to Count I of the

6  first superseding indictment that charges you with conspiring to

7  distribute and to possess with intent to distribute a quantity

8  of methamphetamine that's in excess of 50 grams.  Do you

9  understand this charge that's set forth against you in Count I

10 of the superseding indictment?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  And for this particular Count the maximum

13 penalties that are applicable under the law are set forth in

14 paragraph seven of the plea agreement, and they include a term

15 of imprisonment up to life and a fine of up to $4 million

16 dollars, plus a term of supervised release of not less than five

17 years and up to life.  A minimum term of imprisonment of ten

18 years, a loss of certain Federal benefits that are described in

19 paragraph 7C, and, of course, there is a $100.00 special

20 assessment as to this Count.

21         So these are the maximum penalties that apply to the

22 offense that is charged against you in Count I of the first

23 superseding indictment.  Do you understand these penalties?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  I mentioned supervised release.

1  Supervised release is similar to probation, but after a jail
2  term.  If you are required to serve a term of supervised release
3  you will have to follow certain conditions of supervised release
4  that a probation officer will review with you.  They include the
5  requirement that you obey the law, and you report as required in
6  other conditions.

7          If it is determined during a term of supervised
8  release that you have violated any of the conditions of
9  supervised release you could be required to serve additional
10 prison time.  Do you understand that?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Are you on parole, probation or supervised
13 release in any other case?

14         THE DEFENDANT:  No, your Honor.

15         THE COURT:  Mr. Muehleck, are there any forfeiture or
16 restitution issues involved in this case?

17         MR. MUEHLECK:  Not as to this defendant, I believe,
18 your Honor.

19         THE COURT:  Okay.  Mr. Gonsalves, have you discussed
20 with Mr. Klein the fact that there are sentencing guidelines for
21 the Court to use in determining a sentence in a criminal case?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  And have you discussed how those
24 guidelines might apply to your case?

25         THE DEFENDANT:  Yes, your Honor.

1       THE COURT:  Do you understand that the Court will not

2   be able to determine the guideline sentence for your case until

3   after the presentence report has been prepared, and you and the

4   Government have had an opportunity to challenge the reported

5   facts and the application of the guidelines recommended by the

6   probation officer?

7       THE DEFENDANT:  Yes, your Honor.

8       THE COURT:  And do you also understand that the

9   sentence imposed may be different from any estimate that Mr.

10  Klein has given to you?

11      THE DEFENDANT:  Yes, your Honor.

12      THE COURT:  And do you also understand that after your

13  guideline range has been determined the Court has the authority

14  in some circumstances to depart from the guidelines and to

15  impose a sentence that is more severe or less severe than the

16  sentence called for by the guidelines?

17      THE DEFENDANT:  Yes, your Honor.

18      THE COURT:  And as I mentioned, Mr. Gonsalves, if the

19  sentence is more severe than you expected in all likelihood you

20  will still be bound by your plea.  Even if you do not like the

21  sentence imposed by the Court you probably will not be able to

22  withdraw your plea.  The time to make that decision is now.  Do

23  you understand that?

24      THE DEFENDANT:  Yes, your Honor.

25      THE COURT:  Parole has been abolished, so that if you

1   are sentenced to prison you will not be released on parole.  Do
2   you understand that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Now you have the right to plead not guilty
5   to any offense charged against you and to persist in that plea.
6   You would then have the right to trial by jury, and during that
7   trial you would have the right to see and hear -- you would have
8   the right, first of all, to assistance of counsel for your
9   defense, and the right to see and hear all of the witnesses
10  against you, and to have your attorney cross-examine them.

11              You have the right to testify or to decline to testify
12  and remain silent.  And you have the right to call witnesses on
13  your own behalf, and to require the Court to issue subpoenas for
14  any witnesses you wish to call in your defense.

15              At the trial you would be presumed to be innocent, and
16  the United States would have the burden of proving that you are
17  guilty beyond a reasonable doubt.  Before you can be convicted
18  all 12 jurors must be convinced that the United States has met
19  that burden.

20              If you are found guilty after a trial you would have
21  the right to appeal that conviction to a higher court, and if
22  you could not afford to pay the costs of an appeal the
23  Government would pay those costs for you.  Do you understand
24  your right to a trial and all these other rights that I have
25  just described?

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  If you plead guilty, however, and if the

3    Court accepts that plea there will be no trial.  You will be

4    waiving or giving up your right to a trial and all these other

5    rights that I just mentioned.  Do you understand that?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Also, so long as you plead not guilty you

8    have the right to remain silent.  But if you plead guilty you

9    are waiving that right, and I will be asking you some questions

10   about what occurred in this case.  You must answer those

11   questions truthfully under oath even if your answers establish

12   that you've committed a -- a crime.  Do you understand that?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Mr. Muehleck, would you first of all

15   summarize the elements of the offense that Mr. Gonsalves is

16   pleading guilty to?

17             MR. MUEHLECK:  Yes, the elements would be that the

18   defendant willfully and intentionally entered into an agreement

19   with persons named in the indictment to violate the law.  That

20   is to possess with intent to distribute or to distribute more

21   than 50 grams of methamphetamine and salts or salts of its

22   isomers, and that the defendant entered into that agreement with

23   the intent that the actual offense, the possession with intent

24   to distribute or the distribution of more than 50 grams of

25   methamphetamine take place.  Those would be the elements we'd

1   have to prove.

2         THE COURT:   Any disagreement with that summary, Mr.

3   Klein?

4         MR. KLEIN:   No, your Honor.

5         THE COURT:   So, Mr. Gonsalves, do you understand what

6   Mr. Muehleck said as to the elements of the charge against you

7   in this matter?

8         THE DEFENDANT:   Yes, your Honor.

9         THE COURT:   And so if we had a trial on this

10  particular charge each of these elements would have to be

11  established with evidence and proved beyond a reasonable doubt

12  before you could be convicted of this offense.   Do you

13  understand that?

14        THE DEFENDANT:   Yes, your Honor.

15        THE COURT:   And, Mr. Muehleck, would you summarize the

16  facts of this case please?

17        MR. MUEHLECK:   If -- if we went to trial we would show

18  -- the United States would show that during 2000, 2001 the FBI

19  operated a, or put into operation through the authorization of

20  U.S. District Court Judge a number of wiretaps on cellular

21  phones used by Amako Malapiai and others including Mr. Tagoai,

22  Mr. Politani Latu.   The defendant was intercepted on one

23  occasion or several occasions, I believe.   Mr. Amako Malepeai

24  and Tasi Malepeai were intercepted.

25        It was determined that the defendant was distributing

1   multiple ounce quantities during 2000 and 2001 -- multiple ounce
2   quantities of crystal methamphetamine weekly on the Island of
3   Oahu. On the -- on an occasion the defendant also distributed
4   multiple pound quantities of crystal methamphetamine on Maui for
5   Mr. Amako Malepeai.

6           The defendant routinely received multiple ounce
7   quantities of crystal methamphetamine on credit from Mr. Amako
8   Malepeai, which he broke down into smaller quantities and sold.
9   As I said on one occasion the defendant transported four pounds
10  of crystal methamphetamine for Amako Malepeai to a Mr. Politani
11  Latu on Maui. The defendant understood that Mr. Latu was
12  distributing the methamphetamine.

13          The defendant received approximately $60,000 to
14  $70,000.00 for the crystal methamphetamine transported to Maui
15  and returned the cash to Amako Malepeai.

16          In 2001, the defendant became involved in the
17  distribution of crystal methamphetamine for Tasi Malepeai that
18  is Mr. Amako Malepeai's brother. The defendant routinely would
19  be fronted one-half pound quantities of crystal methamphetamine
20  from Mr. Tasi Malepeai during 2001, which would take the
21  defendant approximately two days to distribute to his customers.

22          On one occasion, Tasi Malapiai provided the defendant
23  with a one pound quantity of methamphetamine -- crystal
24  methamphetamine, which the defendant distributed.

25          On January 30th of last year, 2002, the defendant was

1   stopped by the Honolulu Police Department and found to be in
2   possession of four ounces of crystal methamphetamine, which was
3   -- which had been provided by Tasi Malepeai, and the defendant
4   intended to distribute that methamphetamine.  The defendant was
5   released by the police on that date, January 30th.

6        On April 24, 2002, the defendant possessed in his
7   residence in Ewa Beach, the residence that he shared with his
8   fiancée Ms. Jacqueline Moran, approximately one-half pound of
9   crystal methamphetamine, which the defendant held and intended
10  to distribute.  The methamphetamine had been provided to the
11  defendant by Tasi Malepeai.  When Federal Agents executed the
12  warrant at the defendant's residence in Ewa Beach, agents found
13  methamphetamine in the defendant's bedroom.

14       We would show through the testimony of cooperating
15  individuals, wiretaps, testimony of Federal Agents, Honolulu
16  Police Department Officers, laboratory reports these facts, your
17  Honor, among other things.

18       THE COURT:  So, Mr. Gonsalves, first of all are these
19  facts that were summarized by Mr. Muehleck and as set forth in
20  paragraph eight of the plea agreement.  Are they all true and
21  correct in every respect?

22       THE DEFENDANT:  Um, yes, your Honor.

23       THE COURT:  And I would like you to tell me in your
24  own words --

25       MR. MUEHLECK:  May --

1            THE COURT:  -- yes, Mr. Muehleck?

2            MR. MUEHLECK:  -- may I, your Honor.  There is one

3   part on the bottom of page four and the top of page five that

4   has been lined out.

5            THE COURT:  Right.

6            MR. MUEHLECK:  That bears my initials, and I

7   understand it -- it bears the defendant's initials where it --

8   it's basically a typo.  It's been reprinted -- part of a line

9   has been reprinted.

10           THE COURT:  Okay.  Very well.  And -- and you did sign

11  off on that?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  Okay.

14           MR. MUEHLECK:  Thank you.

15           THE COURT:  So are these facts all true and correct,

16  Mr. Gonsalves, in every respect?

17           THE DEFENDANT:  Yes, your Honor.

18           THE COURT:  Okay, and would you tell me in your own

19  words what you did in this matter?

20           THE DEFENDANT:  Uh, conspired to attempt to distribute

21  an excess of over 50 grams of Ice.

22           THE COURT:  And -- and really as -- as set forth in

23  some detail here on the plea agreement.  That's what you did?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  And all of the amounts except for the one

1  line -- line out that you folks have agreed to are all these
2  amounts that are set forth in the plea agreement, are they all
3  correct and true?
4          THE DEFENDANT:  Yes, your Honor.
5          THE COURT:  Okay.  Mr. Muehleck, anything else you
6  feel I should cover?
7          MR. MUEHLECK:  No.  No, your Honor.
8          THE COURT:  Mr. Klein, do you know of any reason why
9  the Court should not accept Mr. Gonsalves guilty plea in this
10  matter?
11          MR. KLEIN:  No, your Honor.
12          THE COURT:  So, Mr. Gonsalves, then to Count I of the
13  first superseding indictment how do you plead to that Count?·
14          THE DEFENDANT:  Guilty.
15          THE COURT:  Well the Court finds the defendant is
16  fully competent and capable of entering an informed plea and
17  that his guilty plea is knowing and voluntary, and is supported
18  by an independent basis, in fact, containing each of the
19  essential elements of the offense.
20          So I'm signing your report and recommendation
21  concerning the guilty plea, and subject to the Court's
22  consideration of the plea agreement I'm recommending that the
23  defendant be adjudged guilty and have sentence imposed.
24  Objections to the report are waived unless they are made --
25  unless they are filèd and served within ten days.

```
 1              So that, Mr. Gonsalves, the presentence investigation
 2   will take place.  You will be interviewed in connection with
 3   this investigation.  You may have your attorney present at the
 4   interview if you wish.  The report that is prepared is very
 5   important for sentencing purposes, so that -- please review it
 6   carefully after it is prepared.
 7              If there is any problem with the report there is a
 8   time for pointing that out to the Court.  Both you and your
 9   attorney will have a full opportunity to address Judge Ezra at
10   the time of sentencing before your sentence is imposed.  Okay.
11   We'll set the sentencing date and time at this time.
12              THE CLERK:  September 29, 2:15 p.m., Judge Ezra.
13              MR. MUEHLECK:  29 September, 2:15 p.m., Judge Ezra.
14              THE COURT:  Yes.
15              MR. MUEHLECK:  Thank you.
16              THE COURT:  And the detention order previously issued
17   will remain in place.  Anything else to take up at this time?
18              MR. MUEHLECK:  No.
19              MR. KLEIN:  No, your Honor.
20              MR. MUEHLECK:  No, your Honor.  Thank you.
21              THE COURT:  Okay.  Very well.  Stand in recess.
22              THE CLERK:  All rise.
23              (At which time the above-entitled proceedings were
24   concluded.)
25
```

1

2

3                          CERTIFICATE

4           I, court approved transcriber, certify that the

5    foregoing is a correct transcript from the official electronic

6    sound recording of the proceedings in the above-entitled matter.

7           Dated this 3ᵈ day of January, 2005.

8

9                              Jessica B. Cahill

10

11                              Jessica B. Cahill

12

13

14

15

16

17

18

19

20

21

22

23

24

25